# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

ANTHONY B. ADKINS,

                    Petitioner,           :     Case No. 2:21-cv-01203

   - vs -                          District Judge Sarah D. Morrison
                                          Magistrate Judge Michael R. Merz

WARDEN,
  London Correctional Institution,

                                       :
                    Respondent.

# ORDER DENYING STAY; REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Anthony Adkins, is before the Court for decision on the merits. The relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 7), the Return of Writ (ECF No. 8), and Petitioner's Reply (ECF No. 11). The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in this District (ECF No. 12).

Shortly after filing this case, Petitioner moved for a stay of these proceedings pending conclusion of state court proceedings on some of the claims made (ECF No. 4). Upon examination of the State Court Record, the Magistrate Judge finds those state court proceedings have been terminated. Accordingly, the Motion for Stay is denied as moot.

**Litigation History**

On July 27, 2018, a Fayette County Grand Jury indicted Adkins on twenty-seven counts related to trafficking in cocaine (Indictment, State Court Record, ECF No. 8, Ex. 1). A jury found him guilty on fifteen of those counts and he was sentenced to an aggregated term of imprisonment of twenty years (Judgment, State Court Record. ECF No. 8, Ex. 5; Amended Judgment, Ex. 6). On direct appeal, the Ohio Twelfth District Court of Appeals affirmed the conviction and sentence. *State v. Adkins,* 2020-Ohio-535 (12th Dist. Feb. 18, 2020), appellate jurisdiction declined, 158 Ohio St. 3d 1523 (2020).

Adkins filed a petition for post-conviction relief under Ohio Revised Code § 2053.21 on August 10, 2020 (State Court Record, ECF No. 8, Ex. 15). The Common Pleas Court denied the petition without an evidentiary hearing (State Court Record, ECF No. 8, Exs. 16, 17). Adkins sought to file a delayed appeal from that decision which the Twelfth District denied because delayed appeals are not available in civil cases such as on petitions for post-conviction relief. *Id.* at Ex. 22.

In September, 2020, Adkins filed an Application to Reopen his direct appeal under Ohio R. App. P. 26(B)(State Court Record, ECF No. 8, Ex. 18) which the Twelfth District denied. *Id.* at Ex. 19. The State Court Record does not show that Adkins appealed further to the Supreme Court of Ohio.

On March 2, 2021, Adkins filed a petition for writ of habeas corpus in the Supreme Court of Ohio. *Id.* at Ex. 23. The Ohio Supreme Court dismissed that petition *sua sponte*. *Id.* at Ex. 24.

On March 9, 2021, Adkins deposited his federal habeas corpus Petition in the prison mailing system (ECF No. 1, PageID 31). He pleads the following grounds for relief:

**Ground One:** Appellant was denied his Fifth, Sixth and Fourteenth Amendment Rights, pursuant to U.S. Constitution, to the effective assistance of trial counsel, who failed to file pre-trial motions to suppress evidence and dismiss counts 2 -7 and 10–15 of the indictment; thereby denying him a fair trial.

**Supporting Facts:** On June 29, 2018, Fayette County law enforcement followed Appellant to Dayton, Ohio, believing that he was picking up a supply of narcotics. Fayette County Sheriff Deputy, Havens, stopped Appellant's vehicle after it entered Clinton County from Dayton. Deputy Havens was originally staged in Fayette County, and moved to intercept Appellant, when investigators realized that he was not coming directly back to Fayette County. The Deputy testified there was no traffic violation(s) to substantiate a traffic stop. The officer followed Appellant into Clinton County, Ohio, and activated cruiser lights. Ohio Revised Code, section 2935.03, gives the Deputy authority to detain and/or arrest outside of his jurisdiction for a felony when certain necessary elements are present. The pursuit did not take place without unreasonable delay, nor was the pursuit initiated in the jurisdiction in which the Deputy was appointed. A motion to suppress the evidence from the illegal stop would have been granted. Trial counsel did not file a motion to suppress the cocaine seized after the vehicle stop in Clinton County, Ohio. The Deputy testified they witnessed Appellant throwing something out of the driver's side window of the vehicle.

At the close of the State's case, the State moved and the trial court granted, over defense objections, to amend the indictment to conform to the evidence, as presented during the trial. Counts 25, 26, and 27 were amended by adding the words "and Clinton" after the word "Fayette."

Trial counsel through discovery process knew the State had only unnotarized test results that items sold in counts 2-7 and 10-15 were controlled substances. The evidence to support each count was not admissible under Ohio Revised Code, 2925.51. The counts were ultimately dismissed, after the jury heard repeated irrelevant and prejudicial testimony. Lab test results that do not contain a notarized signature, are inadmissible at trial. Counsel knew this prior to trial and failed to file a pre-trial motion to dismiss those counts.

The jury saw evidence of video footage of alleged "drug buys" that was used to support counts 2-7 and 10-15 of the indictment. Counsel did object, but the court allowed the evidence to be presented. At the end of the State's case, defense counsel moved, pursuant to Crim.

3

R. 29, to dismiss counts 2-7 and 10-15, as the lab reports had not been admitted into evidence, for those counts, to prove a controlled substance. The trial court granted all motions, and those counts were dismissed.

**Ground Two:** Appellant was denied his rights to due process and a fair trial, in violation of the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when the trial court denied the Crim.R.29 Motion for Acquittal as the evidence presented was insufficient to find guilt beyond a reasonable doubt.

**Supporting Facts:** The State of Ohio contends it was working on an ongoing drug operation investigation of Appellant-Petitioner, Anthony Adkins, in Fayette County, Ohio. This investigation was initiated by the Confidential Informant, in January 2018, and continued until June 29, 2018. The CI testified he became a CI at the bequest [sic] of Fayette County Sheriff, Deputy Larry McGarvey.

During this investigation it is alleged that Appellant-Petitioner, sold drugs to the CI in numerous "controlled buys," in Fayette County, Ohio. On two occasions the CI drove himself to the location without a valid driver's license. During other alleged transactions, the CI was escorted by drug task force officers. Also the CI was wearing a recording device. It was discovered during trial that the recording device had a malfunction, which resulted in a partial or no recording of some of the alleged buys.

This CI, used by the authorities, was a known drug addict and alcoholic. He was also paid for his work, and this pay increased once he agreed to testify at trial. At no time in any of the recording, (sic) does the CI identify the Appellant-Petitioner or that he went to those locations specifically to see him. One of the task force handlers, Det. Brown, stated he observed the CI under the influence of alcohol, when he was making a controlled buy.

The CI's trial testimony was the only he [sic] identified (sic) Appellant-Petitioner was the seller of the drugs. The same CI, who is an admitted liar and an addict, being paid to buy drugs. It was noted, all the drugs he was paid to purchase all came back to the handler, short on weight. All the relevant video footage fails to conclusively show the drug transactions and who is involved.

The State presented evidence, through the video footage, and CI was permitted to testify to, portions of the video, that represented transactions, for the counts that were later dismissed. It was not until

4

the State presented the entire video footage and subpoenaed the testimony from the CI, then did not dispute the issue to dismiss the affected counts, nor did it move to admonish the jury. This created grounds for a mistrial. Without the dismissed counts, and the evidence presented to support those counts, there is no material evidence to support guilt beyond a reasonable doubt. The CI's testimony was impeached when he was paid and admitted to being an addict.

**Ground Three**: Appellant-Petitioner was denied his Fifth and Sixth Amendments of the U.S. Constitution, rights to a fair trial and effective assistance of trial counsel.

**Supporting Facts:** The State presented a large number of documents in response to the demand for discovery. Trial counsel failed to reasonably investigate possible issues regarding the validity of the search warrant(s). On May 18, 2018, Fayette County Sheriff, Det. Larry McGarvey filed an affidavit in support of a search warrant. Had trial counsel conducted a minimal investigation into the alleged facts, would have discovered the facts were false (sic) and "stale." Counsel would have discovered the search warrant was issued, based upon fraud, by Det. Larry McGarvey.

The search warrant was issued for the placement of a tracking device, for a 2005 black Lincoln, which listed Petitioner, as the vehicle owner, and a false Ohio vehicle registration, that had not been associated on that vehicle for over 6 months.

Further reading the documents would have uncovered that Police Reports for some officers was missing (sic), and the ones presented were falsified and contained information that contradicts each other, on material facts. A simple reading of the discovery documents would have given counsel needed facts for questioning and impeaching the testimony of the State's witnesses.

Trial counsel failed to investigate, which lead (sic) to failures in seeking exculpatory evidence, that could have exonerated this Petitioner. Specifically, the missing "dash cam" video footage, that represent the alleged pursuit and throwing of items from the driver's side window, could support the defense Petitioner was alleged to have taken the police on a chase. All marked Sheriff cruisers are equipped with the dash mounted, video recording system, and actuated when the officer turns on his lights.

The previously mentioned issue, the inadmissible lab reports, is also an example of counsel's lack of being prepared. The validity of the

alleged control substance, being investigated, could have been litigated in a pre-trial proceeding. Trial counsel made no effort to investigate or prepare any pre-trial challenge to the illegal stop and arrest, in Clinton County, outside the Deputy's jurisdiction. There was no traffic violation, or proof of any felony violation during their surveillance.

**Ground Four:** Appellant-Petitioner was denied his Fifth and Fourteenth Amendments to the U.S. Constitution, rights to a fair trial and due process, by the (sic) prosecutorial misconduct.

**Supporting Facts:** The misconduct by the prosecution and asst. prosecuting attorney begins with several acts of fraud.

Several members of the Fayette County Sheriff's office lied and submitted false Police Reports regarding their alleged contact with the Petitioner. The clear act of fraud is the intentional statement alleging all criminal acts took place within Fayette County. The Police Reports state that Petitioner's possession of cocaine, on June 29, 2018, was in Jasper Township, Fayette County, Ohio, not in Clinton County, Ohio. This info was presented as fact to the Fayette County grand jury to secure an indictment.

Other acts were falsified by various members of the prosecution team, include (sic) the suppression of "dash cam" video footage. Without this evidence, the State witnesses (sic) could testify to anything, unchecked, but collabarated (sic) by the testimony of other law enforcement. The State presented testimony that Petitioner's alleged criminal conduct in Dayton, Ohio, was observed through airplane surveillance, also equipped with recording system. Any evidence of this air surveillance is material and exculpatory, and should have been disclosed in discovery.

This prosecutorial misconduct also includes the intentional presentation of inadmissible evidence in the video footage of the alleged controlled buys. At no time in any video footage is the Petitioner identified as the seller of drugs. Further, the testimony of the CI, regarding these transactions, contradict (sic) the testimony of the State's law enforcement witnesses. The Prosecution team presented affidavits to Judicial officers, which contained false information.

(Petition, ECF No. 1, PageID 10-27).

# Analysis

Respondent asserts that the only claims reviewable on the merits in this proceeding are those fairly presented to the Twelfth District on direct appeal and that all other claims are procedurally defaulted (Return, ECF No. 9, PageID 705). Petitioner responds that ordinary processes in the prison were disrupted by delays caused by the COVID-19 pandemic (Reply, ECF No. 11).

## Factual Background

In the course of deciding Adkins' direct appeal, the Twelfth District Court of Appeals made the following findings of fact:

> {¶ 2} In July 2018, the Fayette County Grand Jury indicted appellant on 27 felony drug-related offenses. These charges arose out of an investigation from January to June 2018 concerning crack cocaine sales appellant made to a confidential informant. The investigation culminated in a traffic stop and arrest by members of the Fayette County Sheriff's Office in Clinton County, Ohio. On the day of the traffic stop, the confidential informant had made a large purchase of crack cocaine from appellant. Undercover officers then tracked appellant as he travelled from his home to a suspected drug supplier in Dayton, Ohio. As part of this operation, marked patrol units had been staged to intercept appellant as he returned to Fayette County. However, en route back, appellant changed course and headed into Clinton County. Believing that appellant was heading to a friend's house, the lead officer ordered the marked patrol units to immediately effect a traffic stop. When deputies sought to stop appellant a car chase ensued. Pursuing deputies apprehended appellant after he tried to escape off-road. At no point during this pursuit was appellant in Fayette County.

7

{¶ 3} Appellant entered a not guilty plea and the case proceeded to a jury trial in February 2019. At trial, the state called nine witnesses, including the confidential informant, the various law enforcement officers involved, and an Ohio Bureau of Criminal Investigation ("BCI") forensic scientist. In addition to the witnesses, the state presented BCI laboratory reports to identify the substances as containing cocaine and video recordings of the drug buys.

{¶ 4} At the close of the state's case-in-chief, appellant objected to the admission of several laboratory reports because the documents lacked the notarized statement required by statute. The trial court sustained the objection. As a result, the trial court granted appellant's Crim.R. 29 motion for the 12 offenses (Counts 2-7 and 10-15) involving the inadmissible laboratory reports. The jury found appellant guilty on the remaining 15 counts, alleging engaging in a pattern of corrupt activity, possession of cocaine, and trafficking in cocaine.

*State v. Adkins,* 2020-Ohio-535 (12th Dist. Feb. 178, 2020).

Adkins takes issue with these findings and claims instead:

The so-called investigation includes crack cocaine sales by a confidential informant ("CI"), who was an addict. Further review of the investigation shows that the "CI" only identified Petitioner during trial. At no time on video or recording does he acknowledge Mr. Adkins as the person he was dealing with. On the day of the traffic stop and arrest, Mr. Adkins was followed to his sister's home in Dayton, Ohio. At no time did any of the law enforcement officers verify who lived at the Dayton address. Nothing presented at trial was ever authenticated. Petitioner was unlawfully stopped outside the territorial jurisdiction of the Fayette County Sheriff. The record of events has been altered to fit the Prosecution's theory. The Trial Court permitted the amendment of the indictment to include Clinton County, Ohio. The Sheriff did attempt to stop the vehicle in Clinton County, however the testimony gave mistaken impression to the Jury to believe he was pursued from Fayette County into Clinton County.

The fact is, Defense Counsel did object prior to the end of the State's case to the use of the Lab Reports. The Objection was Overruled by the Court, and later the Counts related to the inadmissible lab reports were dismissed. Petitioner was prejudiced by the fact that video footage of those alleged transactions were already viewed by the Jury. Without seeing that video evidence, the State lacked sufficient

> evidence to convict on those counts. The Jury was permitted to view
> evidence that the trial determined was inadmissible.

(Reply, ECF No. 741-42).

Findings of fact made by the state courts are presumed to be correct in later habeas corpus proceedings unless the petitioner proves they are rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e). The evidence on which the petitioner relies for rebuttal must be already present in the state court record. *Cullen v. Pinholster*, 563 U.S. 170 (2011). Here the Petitioner has given the Court no record references to show that his version of the facts clearly rebuts the findings of the Twelfth District, despite the fact that Petitioner has been furnished with the same copy of the trial transcript that has been furnished to the Court. For example, where in the record is it proved that the confidential informant was an alcoholic and an addict[1]?

**Ground One: Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Adkins claims he received ineffective assistance of trial counsel when his trial attorney (1) failed to file a motion to suppress and (2) failed to move to dismiss Counts 2-7 and 10-15 on the basis that they were supported by inadmissible laboratory reports which had not been notarized.

Adkins presented these two claims as his first two assignments of error on direct appeal. In deciding them the Twelfth District recited the generally applicable Sixth Amendment standard from *Strickland v. Washington,* 466 U.S. 668 (1984). As to the first assignment of error, it found that the underlying claim that evidence had been unlawfully seized by deputies from Fayette County in Clinton County would not have been successful if raised by motion to suppress.

---

[1] Presumably Petitioner intends to assert the CI was addicted to some other substance of abuse in addition to alcohol.

{¶ 13} Regarding the first assignment, the "failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful if made." *State v. Brown*, 12th Dist. Warren No. CA2002-03-026, 2002-Ohio-5455, ¶ 11. Relevant for our purposes, R.C. 2935.03(A)(1) provides that a

> sheriff [or] deputy sheriff * * * shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision, * * * in which the peace officer is appointed, employed, or elected, a law of this state, an ordinance of a municipal corporation, or a resolution of a township.

{¶ 14} It is with the limited "hot pursuit" exception provided in R.C. 2935.03(D) that these peace officers may conduct a warrantless arrest and detention of an individual outside their territorial jurisdiction. Appellant suggests that the "hot pursuit" exception is inapplicable because the Fayette County deputies' pursuit was not initiated within Fayette County. Nevertheless, R.C. 2935.03 does not provide a remedy for instances when peace officers violate the statute by effecting a warrantless arrest outside their territorial jurisdiction and the Ohio Supreme Court has refused to adopt its own remedy for a violation of this statute. *State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, ¶ 21. Therefore, appellant's reliance on R.C. 2935.03 is misplaced. A violation of R.C. 2935.03 does not require the exclusion of evidence. *Id.*; *State v. Weideman*, 94 Ohio St.3d 501, 2002-Ohio-1484, paragraph one of the syllabus; *State v. Dallman*, 12th Dist. Clermont Nos. CA2017-11-056 and CA2017-11-057, 2018-Ohio-2670, ¶ 32. Any motion to suppress based on this statutory violation alone would not have been successful.

*State v. Adkins, supra.*

The question of whether the seizures made by these Fayette County deputies were required to be suppressed for the reason Adkins argues – because they were acting outside Fayette County – is a question of Ohio law. The Twelfth District decided that question adversely to Adkins' position and its decision on this point of Ohio law is binding on this Court. *Bradshaw v. Richey*, 546 U.S. 74 (2005). It cannot be ineffective assistance of trial counsel to fail to file a motion to

suppress which would have been unsuccessful. Thus the first branch of Adkins' First Ground for Relief is without merit.

Regarding the second claim of ineffective assistance of trial counsel, the Twelfth District's decision is also dispositive. Adkins is correct that, as a matter of Ohio law, the lab reports in question could not be admitted in evidence without a notarized signature, as the Twelfth District confirmed. But as it also noted, a motion to dismiss based on the absence of the notarizations would almost certainly have been unsuccessful because the prosecutor could easily have obtained the notarizations. Even if it had been successful, nothing would have prevented the prosecutor from obtaining new notarized statements and reindicting. By withholding the objection until it was too late for the prosecutor to do either of those things, defense counsel achieved a final dismissal of the relevant charges. Jeopardy attaches in a jury trial when the jury is sworn. *Martinez v. Illinois*, 134 S. Ct. 2070 (2014); *Crist v. Bretz*, 437 U.S. 28 (1978). Therefore no reindictment was possible.

Adkins claims that dismissal before trial would have kept the jury from learning about the conduct underlying the dismissed charges. Not so. Because these other acts were part of a course of criminal conduct, testimony about them could have been introduced under Ohio R. Evid. 404 even if ultimately there could not have been a conviction because of the absence of the notarization.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). Here the Twelfth District's

11

decision on Adkins first two assignments of error was a reasonable application of *Strickland*. On

that basis, Adkins' First Ground for Relief should be dismissed.

**Ground Two:  Insufficient Evidence**

In his Second Ground for Relief, Adkins claims the evidence on which his conviction is

based was insufficient to prove guilt beyond a reasonable doubt.  Adkins raised this claim as his

Third Assignment of Error on direct appeal which the Twelfth District decided together with his

Fourth Assignment, a manifest weight of the evidence claim.  The appellate court decided those

claims as follows:

> {¶ 25} In his third and fourth assignments of error, appellant argues that there was insufficient evidence to find him guilty of engaging in a pattern of corrupt activity and the multiple drug offenses, therefore the trial court erred in denying his Crim.R. 29 motion for acquittal. Appellant further argues that the guilty verdicts were against the manifest weight of the evidence. In support of these claims, appellant argues that it was improper for the jury to believe the confidential informant's testimony.

> {¶ 26} The standard of review for a denial of a Crim.R. 29 motion is the same standard used for reviewing a sufficiency of the evidence challenge. *State v. Robinson,* 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 37. On a sufficiency challenge, the reviewing court must determine whether the prosecution has met its burden of production. *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34. Therefore, the reviewing court must examine the evidence to determine whether any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Smith,* 12th Dist. Warren Nos. CA2012-02-017 and CA2012-02-018, 2012-Ohio-4644, ¶ 25.

> {¶ 27} On the other hand, a manifest weight of the evidence challenge requires the reviewing court to examine the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett,*

12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In conducting this examination, a reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Sizemore*, 12th Dist. Warren No. CA2019-01-006, 2019-Ohio-4400, ¶ 21. While a manifest weight of the evidence review requires this court to evaluate credibility, the determination of witness credibility is primarily for the trier of fact to decide. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. A reviewing court will overturn a conviction based on a manifest weight challenge only in the exceptional instance, to correct a manifest miscarriage of justice, where the evidence weighs heavily in favor of acquittal. *State v. Wilson,* 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34. The determination that a conviction is supported by the manifest weight of the evidence will be dispositive of the sufficiency of the evidence challenge. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 28} The jury found appellant guilty of both trafficking in cocaine and possession of cocaine. Appellant was charged with two different types of trafficking offenses. For six of the trafficking offenses, the prosecution had to prove that appellant knowingly sold or offered to sell a controlled substance or a controlled substance analog. R.C. 2925.03(A)(1). For the remaining trafficking offense, the prosecution had to prove that appellant knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed a controlled substance or a controlled substance analog, when the offender knew or had reasonable cause to believe that the controlled substance or a controlled substance analog was intended for sale or resale by the offender or another person. R.C. 2925.03(A)(2). For each of the possession offenses, the prosecution had to prove that appellant knowingly obtained, possessed, or used a controlled substance or a controlled substance analog. R.C. 2925.11(A). In order for these offenses to constitute more serious felonies the prosecution had to prove a certain mass, i.e. to constitute a fourth-degree felony the cocaine had to be at least 5 grams but less than 10 grams and to constitute a first-degree felony the substance containing cocaine had to be at least 27 grams but less than 100 grams. R.C. 2925.03(C)(4)(c) and (f).[4] Finally, appellant was charged with a major drug offender specification on count 26, therefore the prosecution had to prove that the transaction involved a substance containing cocaine of more than 100 grams. R.C. 2925.03(C)(4)(g).

¶ 29} After review of the record, we find that the guilty verdicts were not against the manifest weight of the evidence. The jury heard the confidential informant testify that on each occasion he met appellant at either his home or a nearby hotel and exchanged money for crack cocaine. The informant testified that he only received the crack cocaine from appellant in these transactions. In addition to the confidential informant, the jury heard from three detectives involved in the investigation. These detectives testified that on each occasion the confidential informant was physically searched by one of the detectives and then driven by a detective to the sale location. During the operation, the informant was under law enforcement supervision except for the short time he would leave the vehicle to conduct the purchases. Upon coming back to the vehicle, all the witnesses involved in the operation testified that the informant would give the crack cocaine to the detective escorting him. These detectives, together with the detective assigned to evidence room supervision, testified as to the chain of custody for the substances received from these transactions. Moreover, the prosecution presented video recordings taken from a device the informant carried into several of his "buys." In these videos, appellant can be identified as the person meeting with the informant. Finally, the state presented laboratory reports from the BCI identifying the purchased substances as containing cocaine and their various weights. Altogether, this evidence demonstrated that appellant knowingly possessed and sold crack cocaine to the informant in six transactions, two of which involved substances with a mass of 5.5 grams and 35.44 grams. Appellant's convictions are not against the manifest weight of the evidence because the jury believed the testimony of the prosecution's witnesses. *State v. Burrell*, 12th Dist. Fayette No. CA2016-04-005, 2016-Ohio-8454, ¶ 22.

{¶ 30} For the R.C. 2925.03(A)(2) trafficking offense and major drug offender specification, the prosecution presented testimony from the deputies involved in the traffic stop. One deputy testified that during the pursuit, he saw appellant dumping objects out of his window. In searching the field, deputies discovered two bags of suspected cocaine on the ground near the tire tracks created by appellant's vehicle. The prosecution presented photographs taken of the two bags at the scene. To identify the substances, the prosecution called the BCI forensic scientist to testify, in addition to submitting her laboratory report. The scientist testified that through her testing she determined the substances contained cocaine and the substance from one bag weighed around 53.78 grams and the other weighed around 52.93 grams. Therefore, this evidence again demonstrated that appellant knowingly trafficked cocaine in an amount of more than 100 grams.

{¶ 31} Finally, to find appellant guilty of engaging in a pattern of corrupt activity, the prosecution had to prove that he conducted or participated in, directly or indirectly, the affairs of an enterprise through a pattern of corrupt activity, or the collection of an unlawful debt, as part of his employment or association with that enterprise. R.C. 2923.32(A)(1). An enterprise includes an individual. R.C. 2923.31(C). Corrupt activity is defined, inter alia, as engaging in conduct constituting a violation of R.C. 2925.03 and the proceeds from one of the violations or a combination of the violations exceeds $1,000. R.C. 2923.31(I)(2)(c). A pattern of corrupt activity means two or more instances of corrupt activity, whether or not there is a prior conviction, related to the affairs of the same enterprise. R.C. 2923.31(E). Here, the jury heard evidence as to the various amounts of money the confidential informant paid for the separate transactions of crack cocaine. In his final transaction alone, the informant paid around $1,800 for crack cocaine, altogether the informant paid over $2,000 for the combination of transactions. Moreover, a detective testified that appellant admitted during an interview to paying his supplier $4,400 on the day of his arrest. Therefore, based on the testimony of the amounts paid and the guilty verdicts for the multiple possession and trafficking offenses, it was not a manifest injustice for the jury to find appellant guilty of engaging in a pattern of corrupt activity.

{¶ 32} Accordingly, the jury did not clearly lose its way and create a manifest miscarriage of justice. Given our determination that appellant's convictions were supported by the manifest weight of the evidence, we conclude that the there was sufficient evidence to support the jury's findings of guilt. *State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶ 11. Appellant's third and fourth assignments of error are overruled.

*State v. Adkins, supra.*

As noted above, when a state court decides a constitutional question later presented in habeas corpus, the habeas court must defer to the state court unless the state court's decision is an unreasonable application of clearly established Supreme Court precedent. *Williams v. Taylor, supra.* A claim that a verdict is supported by insufficient evidence states a claim for habeas relief under the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307 (1979). A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir.

1986).

However, a state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).  The Twelfth District recognized this in ¶ 32 of its decision.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012).

The Magistrate Judge concludes the Twelfth District's decision on the weight of the evidence is entitled to deference because it is not an unreasonable application of the *Jackson* standard.  Adkins' Petition emphasizes the many ways in which the credibility of the confidential informant was undermined on cross-examination, but the credibility of witnesses is for the jury to decide and they clearly decided to believe him.

Therefore Adkins' Second Ground for Relief should be dismissed on the merits.


**Ground Three:  Denial of a Fair Trial and Ineffective Assistance of Trial Counsel**


In his Third Ground for Relief, Adkins claims he received ineffective assistance of trial counsel because his attorney did not investigate the facts underlying Deputy McGarvey's search warrant affidavit and the missing dash cam footage which could have been exculpatory.

Adkins first presented this claim to the Ohio courts in his Petition for Post-Conviction Relief under Ohio Revised Code § 2953.21 (State Court Record, ECF No. 8, Ex. 15, PageID 190-92).  That was appropriate because it depends on facts outside the appellate record.  Ohio has two mutually exclusive remedies for ineffective assistance of trial counsel.  If the claim depends on evidence in the appellate record and can therefore be decided on direct appeal, the claim must be raised there or be barred by *res judicata*.  *State v. Perry*, 10 Ohio St. 2d 175 (1967).  On the other hand, if the claim depends on evidence *dehors* (outside) the appellate record, it must be presented in a post-conviction petition.

Defendant's Petition for Post-Conviction Relief contains many assertions of fact outside the appellate record.  It also refers to an affidavit from Petitioner which is not in fact attached in the State Court Record.  Assuming there was such an affidavit, it would plainly contain information outside the appellate record, presumably relating to what Adkins knew of his attorney's investigation.

Respondent asserts the claims made in Ground Three are barred by Petitioner's procedural default in failing to timely appeal from the dismissal of the Petition by the Common Pleas Court. Petitioner responds

> Petitioner's efforts to meet certain deadlines were hindered by the prison lock-down and the national pandemic, Covid-19. He made several 'good faith' attempts to file every document timely. Petitioner, was prejudiced by this extraordinary situation, that brought this country to a halt. There are still sectors of the economy that have not and may not come back. This court will see that Petitioner's filings were hand written, as the prison law library was unavailable for the first 8 months of the pandemic. Upon a slow and limited access to material, petitioner still managed to submit most of his filing timely. There is clear "cause' and "prejudice" here, petitioner demonstrates that he was diligent in his efforts to meet all scheduled filings. Petitioner can further show that external elements dealing with Outgoing Inmate Mail during that time also prevented timely filings. Ohio DRC requires that to apply postage to outgoing mail, inmates must submit Check-Out slip for payment of postage to the prison Cashier's office. During the heart of this pandemic, petitioner waited sometimes 60+ days to have his mail processed.

(Reply, ECF No. 11, PageID 745-46).

The State Court Record shows Judge Breathard entered judgment on the post-conviction petition on February 2, 2021, and ordered the Clerk to serve a copy on Adkins (Amended Judgment, State Court Record, ECF No. 8, Ex. 17, PageID 203-04).  Adkins filed his Motion for Delayed Appeal on March 11, 2021. *Id.* at Ex. 21.  That Motion was filed simultaneously with the Notice of Appeal. *Id.* at Ex. 20.  Those simple facts seriously undermine his claim that the

pandemic prevented his timely filing of his Notice of Appeal. The content of a notice of appeal is very simple: "I appeal from X judgment." Adkins' own Notice of Appeal here was prepared by his filling in a pre-printed form and changing the court to which the appeal was taken from the Second District to the Twelfth District. *Id.* No legal research or printing was required. Adkins' Motion for Delayed Appeal is handwritten, but did not require any legal research. Nor was it rejected because it was somehow illegible, but because Ohio appellate courts do not have jurisdiction (authority/power) to grant a delayed appeal.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural

19

> rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

To the extent Adkins is claiming that the COVID-19 pandemic is excusing cause for his not timely appealing the denial of his post-conviction petition, his claim is not persuasive. For the reasons given above, preparation of a notice of appeal is a simple matter: one sheet of paper and no legal research. Adkins claims he made several good faith efforts to file papers in a timely fashion, but he offers no detail about what efforts he made to file the Notice of Appeal on time. Nor does he offer any corroboration of his supposed efforts or of how the pandemic affected his particular prison at the particular time in question.[2]

Time limits on appeal are an adequate and independent state law basis for denying relief. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004)(citations omitted). Lack of counsel at that stage, lack of a trial transcript, unfamiliarity with the English language, and short time for legal research in prison do not establish cause to excuse this default. *Bonilla*, *citing Murray v. Carrier,*

---

[2] The Court notes that Adkins has complained loudly about the lack of corroboration of the confidential informant's testimony. He thereby at least implicitly confirms that uncorroborated testimony is not always completely persuasive.

477 U.S. 478, 494-95 (1986).

On this basis, the Magistrate Judge concludes Adkins' Third Ground for Relief is barred by his procedural default in failing to timely appeal from denial of his post-conviction petition.

**Ground Four: Prosecutorial Misconduct**

In his Fourth Ground for Relief, Adkins claims he was denied due process and a fair trial by prosecutorial misconduct consisting of presenting false police reports to the grand jury, suppressing the dashboard camera footage, not providing the results of aerial surveillance (which is alleged to be exculpatory), presentation of inadmissible video footage of alleged controlled buys, and presenting false affidavits to judges to obtain search warrants.

Respondent argues these claims are procedurally defaulted because they could have been adjudicated on direct appeal but were not presented to the Twelfth District in that proceeding (Return, ECF No. 9, PageID 735, *et seq*). Petitioner offers no response on this point but argues briefly the substance of his claim that failure to disclose the dash cam footage was a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

Adkins appears to have raised some of these claims for the first time in his Application to Reopen the Appeal under Ohio R. App. P. 26(B). For example, the claimed *Brady* violation about the dash cam footage and the allegation of falsified police reports appear in that filing (State Court Record, ECF No. 8, PageID 210). Raising these claims as ineffective assistance of appellate counsel claims, which is the sole purpose of App. R. 26(B), does not preserve the underlying claims. The question for this Court is whether the Twelfth District's decision of the 26(B) Application was a reasonable application of *Strickland*.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome

confidence in the outcome." 466 U.S. at 694.  See also *Darden v. Wainwright*, 477 U.S. 168, 184

(1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing

*Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*,

466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."

*Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S.

86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether
> a court can be certain counsel's performance had no effect on the
> outcome or whether it is possible a reasonable doubt might have
> been established if counsel acted differently. See *Wong v.
> Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328
> (2009) (per curiam); *Strickland,* 466 U.S., at 693, 104 S. Ct. 2052,
> 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably
> likely" the result would have been different. Id., at 696, 104 S. Ct.
> 2052, 80 L. Ed. 2d 674. This does not require a showing that
> counsel's actions "more likely than not altered the outcome," but the
> difference between *Strickland's* prejudice standard and a more-
> probable-than-not standard is slight and matters "only in the rarest
> case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The
> likelihood of a different result must be substantial, not just
> conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

The *Strickland* standard applies to evaluating claims of ineffective assistance of appellate

counsel. The *Strickland* test applies to appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285

(2000); *Burger v. Kemp,* 483 U.S. 776 (1987).  To evaluate a claim of ineffective assistance of

appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise.

*Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing  Wilson v. Parker*, 515 F.3d 682, 707 (6th

Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a

reasonable probability exists that inclusion of the issue would have changed the result of the

appeal. *Id*., *citing Wilson*.  If a reasonable probability exists that the defendant would have

prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986).  "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome."  *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008).

In denying Adkins' 26(B) application, the Twelfth District held

> counsel's failure to argue those issues appellant presents in his application does not raise a genuine issue as to whether counsel was ineffective since counsel is not required to present every imaginable issue on direct appeal. Counsel reasonably did not raise the issues appellant now seeks to raise because on appeal, counsel must "winnow out weaker arguments" and focus on key issues and arguments. *State v. Monford,* 10th Dist. Franklin No. 09AP-274, 2012-Ohio-5247, ¶119.

(Entry Denying Application to Reopen Appeal, State Court Record, ECF No. 8, Ex. 19, PageID 220).  The Twelfth District specifically cited to *Strickland* and *Jones v. Barnes* as controlling precedent. *Id.*

The Magistrate Judge concludes that the Twelfth District's decision on the 26(B) Application is a completely reasonable application of *Strickland* and is therefore entitled to

deference under 28 U.S.C. § 2254(d)(1). Because Adkins has not shown it was ineffective assistance of appellate counsel to fail to present the omitted assignments of error which he now pleads under Ground Four, he cannot rely on ineffective assistance of appellate counsel as excusing cause for not presenting these claims on direct appeal. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Moreover, there is no indication in the State Court Record that Adkins ever appealed to the Ohio Supreme Court from denial of his 26(B) Application which makes any claim of ineffective assistance of appellate counsel procedurally defaulted. On these two bases, the Fourth Ground for Relief should be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

September 24, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.